I am informed that one of the attorneys on the first case, S.P.V. Osis v. U.B.S. is not here. Is that still correct? So, with all due respect, I'm going to put you at the end of the calendar. We are. I'm on. Oh, you already are? We're going to go on number two. And when they come, we'll just call them to the podium. Okay, so this case is Karen Dixon v. A Better Way Wholesale Autos. Good morning, Your Honors. Good morning. If I may please the Court, my name is Kenneth Votri, and I represent the appellant defendant in this case. Well, actually, plaintiff in this case. It was on an application to vacate, Your Honors. Simply put in this case, and it's been a contested issue, but in this case, there was an arbitration on an automobile purchase, and it's something that's commonly done within my practice with this client. We do a number of them. The hearing took place, and at the end of the conclusion of the hearing, there was an agreement that the issue of attorney's fees would be put to the end of the case after the arbitrator decided the case. The evidence concluded as to liability and damages, and a schedule was set for briefing. Although he didn't have, as he said, a precise amount of damages. Well, that's where I was going to get to. In a way, Your Honor, that's my issue in this case. What happened is the hearing takes place, and there was a big argument below as to what constitutes closing the hearing, but what Mr. Blinn, who handled the hearing for the claimant in the arbitration, agreed is that the only thing that was left open was attorney's fees. That's what our normal . . .  against your client. No, there was no agreement that . . . You are misstating the record. You have misstated the record all the way through, and Judge Thompson found you to have misstated the record with respect to whether it was closed, with respect to damages as against attorney's fees, with respect to the amount of time, whether it was one day or one month after, and you are misstating today. Frankly, I'm not sure why one should put up with that. Your Honor . . . I very rarely say something like this, but this has been going on from the very beginning of this case. May I say something with all due respect, Your Honor? Frankly, I'm an extremely honest person, and I am, and I mean this with respect, offended by what the lower court said. I was at this arbitration, and Mr. Blinn and I have done dozens of these arbitrations, and the normal practice is we put the case on, and I agree that we don't put the attorney's fees on as part of the arbitration, and those are handled after the arbitration award. Are you calling Judge Thompson a lawyer? Absolutely not, Your Honor. I'm just saying that I disagree with him. Your Honor, I'm going to tell you something. I'm a very kind and honest person. I am very hurt by what he said about me. I am tremendously hurt about it, and in fact, I am actually . . . I don't understand it. I understand his argument, but I don't understand it. This was a simple matter where the arbitration took place. Everyone agreed that the arbitrator would make a decision as to liability and damages after the hearing, and that there would be an affidavit submitted on attorney's fees with my right to object to it, and that's all we did. I understand from the record, please tell me if I'm wrong, that after the arbitrator said that he wanted something more precise . . . I object. . . . that opposing counsel wrote to your client or to you three times and said, can we get together and do this, and never got a response. Because I didn't agree, Your Honor. I objected at that point to the whole procedure. You don't agree what goes onto the list. You can't just ignore the request to make the list. Oh, no. I did not agree to damages in any way. I didn't . . . we were contesting the damages. But you didn't answer what the district court asked you to do. Now, why did you not . . . Are you talking about . . . I'm sorry, I'm confused. The district court or the arbitration are we talking about? I thought your reference was what the arbitrator had asked for an agreement on the damages. . . . neglect, you never put in a list. You never filed anything, and so the district court was free to find that it wasn't excusable because you didn't respond to the earlier requests. No, my office didn't respond, and what we indicated . . . You responded to the request? No, no, we did not. There was an office error. I don't deny there was an office error in that. You're talking about before you got to district court, the arbitrator said he needed something more to get a precise ruling on the damages, and opposing counsel, and he said . . . he suggested that you two get together, and opposing counsel . . . No, we didn't do that. I objected to the process. I objected at that point in the arbitration to any evidence being submitted . . . to his proposed procedure. I raised this argument that we had closed the evidence on liability and damages at that point. He then ruled against me. Actually, as I read the record, it wasn't new evidence. It was stuff that was already in the arbitration. Well, the issue was there was no new affidavit or anything submitted. The arbitrator requested additional material. Mr. Blint submitted . . . A supplementary filing. He filed it, and he filed it, and it was filed. We disagreed with the process, and we objected to that. I did not participate in agreeing to any level of damages because we didn't agree to the process. I rested on my objection on the process that the arbitrator chose to follow. May I just describe what I think the district court and a very longstanding and careful district judge thought was going on? Who I respect greatly, Your Honor. Well, tell me if I am wrong if this is what he thought. He thought that your client was taking advantage of people who bought automobiles in a way that he thought was not likely to be nice. That because of the agreement, this went to arbitration, which generally is viewed as being favored to people like your client in situations. It's your clients who put in the arbitration clause. Nonetheless, the arbitrator found against you in all of these things. You then continued to argue really in the hope that somebody as small as this one would not have pro bono lawyers and would drop out, and that you have continued to do that all the way through, which is why he gave additional sanctions of attorney's fees after finding damages, which he thought was still an open question. Now, that's what the district court, reading him, seemed to think. Am I wrong in describing that? I don't agree there were sanctions, Your Honor. The attorney's fees are statutorily mandated on truth in lending. He added this. He did for the application to vacate, and he had every right to do that under truth in lending. He added the attorney's fees before the district court. I understand your question, but to react to it, my client is a used car business that sells thousands of cars a year. I will tell you, there's going to be problems with some automobiles. They actually feel very strongly that they do the best they can for their customers. Nothing's perfect, and with a volume of four or five thousand cars a year, mistakes happen. We, however, defended the case because even . . . I'm not conceding my client is a bad person or a bad company, but they're entitled to defend their case also. Of course they are. They're entitled to the arbitration they agreed to, and they lost the arbitration. We have a right to file an application to vacate, but what happened with Judge Thompson is that we see things differently. At the hearing, where I feel that we were treated unfairly at the hearing, is we came to the hearing and we put our evidence on. They put their evidence on. Like any civil case, we then filed our briefs and expecting a decision. All I've argued all along is the judge then, instead of making that . . . I'm sorry, the arbitrator. Instead of making that decision, what he did is he said, I can't make a decision as to damages. I need more information. All I've argued all along is if you look at a civil case, we each had our opportunity to put the case on. Isn't he entitled to do that under the rules? Well, there can be a motion to reopen the evidence. That didn't happen here. A motion by who? Either party could make the motion. But can't the arbitrator on his own reopen . . . That's not exactly what he did, and here's why I differ with this. I'm trying to deal with all due respect. We feel wrong. The reason is, is because we thought that we put all the evidence in, and I got a decision that said, I can't tell what the damages are. Can't tell precisely. Can't tell precisely. But he didn't even award $1 of damages. Didn't he order a supplemental filing at that point? He did order a supplemental filing. Because he wanted to clear up his issue. But I think when you have a hearing, like a trial, and you put on your evidence, it's unfair to say . . . But this is an arbitration, and you chose an arbitration. You did. An arbitration structure is a different one from an ordinary trial. The arbitrator has a great deal of leeway in doing things one way or another. And here he said that he didn't know what the damages were precisely, and clearly thought that there would be room to do that later. You thought, maybe, that that was only attorney's fees. But why isn't that just exactly what an arbitrator is able to do? The reason here is we had already agreed we were going to brief it afterwards. And there had been no discussion of, for example, finding liability and damages later. From our view, Your Honor . . . He found liability and asked for help in deciding what the precise damages were. From our view, that's like a redo. And let me explain why. If I use the parallel of a court case and say, you know, Mr. Plaintiff . . . It's not a court case. That's why people go to arbitration. But there's . . . Because it's more speedy. Basic rules of due process still apply. And what I saw is that . . . Violated due process? For the arbitrator having said, we haven't said precisely what damages are, to then take in evidence of damages? That's a violation of due process? I think it reaches close to it, Your Honor, because . . . If you please hear me out. My concern is . . . Is what happens is . . . Is if I . . . If I'm in a hearing and the arbitrator says, you didn't quite make it. I don't have enough information to get damages. To send it back with instructions . . . But that's not what he said. He said, I have found liability. There are damages here. I can't calculate them with precision. And then he instructed the parties to do the math. By the way, which is consistent with my practice. I never do the actual math on damages. I have the parties work it out. And then if there's substantial agreement and it comports with my calculations, then I grant them. And indeed, he called it an interim award for that very reason. Well, Your Honor, to be accurate, however . . . Having gone through this process with Mr. Blinn on cases with this client and other clients . . . The award, if you reserve the attorney's fees, is always called an interim award. Because even if he had found a specific amount of damages, he would have titled it interim. Because the final award would then be the attorney's fees. You just ignored that term. You just ignored it. I'm not ignoring it. We use it. You argued it was final. You argued it was final. Your Honor, when we do these hearings, the interim award contains the liability and damages finding. Do you do these regularly? Yes. Do you do these kind of things regularly? I do these . . . Actually, with the lawyer that was on the other side of this case, we sort of tend to tangle with each other on a regular . . . Is this a regular part of your practice to defend a better way before arbitration? I do several, yes. For the last two years. That makes the excusable neglect argument less believable. Well . . . If this was your practice . . . Your Honor . . . . . . that's what you do. All I know is I have an associate who could have deleted things from the e-mail, thinking she was doing the right thing. It just threw us off. It's a simple mistake. I am embarrassed by it, but it's me trying to manage younger lawyers who thought that when they were doing everything, they take it off the calendar. It was a mistake. Yes. I have a different question. Do we have a right, were we to decide against you, to order attorney's fees in our court, as the district court did below? Is it possible for us to ask whether the argument is so frivolous that additional sanctions should be imposed? What I think the procedure is, is that gets referred to the trial court. Your trial court is required . . . Or attorney's fees here, before our court? I think because the factual finding has to be made by the district court, I believe. Your time has long expired, but you have reserved three minutes for rebuttal. Thank you, Your Honor. We'll hear from opposing counsel. May it please the Court, my name is Brian Bromberg. I represent the Plaintiff Appellee, Karen Dixon, on this case. I am not Mr. Blynn. Mr. Blynn handled the underlying matter. Your Honors, even if everything that Mr. Votri has said were true, even if the hearing had been closed under the AAA rules, under AAA rule 41, the arbitrator had the absolute right to reopen the hearing. That is, even if the arbitrator had closed the hearing to additional evidence, and even if new evidence had been submitted, which it wasn't here, we were actually just referring back to our earlier filings, the arbitrator would have had the right under the AAA rule to reopen the hearing and hear additional evidence. So even if everything that my adversary is saying were true, under Rule 41 of the AAA rules, they would have had the right to reopen it. And is it the case that the precise amounts calculated by your client were derived from the materials that were before the arbitrator? Yes, absolutely. There were pre-hearing submissions. There was a joint exhibit list. There were joint exhibits that were submitted. The joint exhibits, that's J2 and J12, I believe. They can be found in the supplemental appendix at pages 204 to 206 and 209 to 211. There was also the pre-hearing memorandum that's in the supplemental appendix at page 213 starting. And that had all the calculations. In fact, what we believe happened here was that if you look at page SA213, that is the pre-hearing memo. It had a very detailed explanation of the calculation of damages, which, after all, is primarily statutory here. And then you have the post-hearing memorandum that the arbitrator requested. And in the very first paragraph of that post-hearing memorandum found at SA251, it says, Karen Dixon Claimant submits the following as her post-hearing memorandum. In her November 30th pre-hearing memorandum, Claimant addressed in detail the legal basis for her claims and the applicable case law. Rather than restate the legal authority herein, she relies upon and incorporates her earlier memorandum. In other words, there was a thorough pre-hearing memorandum. And to some extent, you can't read the mind of the arbitrator, but basically what appears to have happened was there were the pre-hearing submissions. Rather than recite everything again in detail in the post-hearing memorandum that the arbitrator requested, Mr. Blinn incorporated it all by reference. And then the arbitrator, looking at the post-hearing memorandum, wasn't quite sure how to calculate the damages and said, can you give me a refresher? Nothing new was submitted. The documents that were submitted, the post-hearing memorandum summary of relief appearing on page SA262 was really all incorporated in the exhibits that were submitted to the arbitrator. He asked your client to comb the record for evidence that was already there and added up for him. Exactly, exactly, I guess. Now, could you answer my question? If we were to rule for you and found that this appeal was frivolous, could we order lawyers' fees on appeal and could we ask ourselves about fervor sanctions? Should we think it possible that they should be imposed in a case of this sort or would we send it back to the district court? My understanding, Your Honor, is that this court, I'd have to go back and look. It's been a while since I've researched this. This court would certainly have the power to impose sanctions. There would have to be, presumably. For the appeal. For the appeal, exactly. For the appeal, there would presumably have to be some sort of order to show cause and an opportunity for Mr. Votri and us. For additional sanctions, certainly. Right. For lawyers' fees, would they be covered by the statute so that we could impose them without additional notice or would we? I believe so, Your Honor. As I said, I haven't researched that issue. The district court on its own, without an additional order to show cause, imposed lawyers' fees, but that was a statutory issue. Interestingly, Judge Thompson-Below still has not decided the order to show cause for the sanctions. In other words, he brought everyone in. He brought in Mr. Blinn and Mr. Votri and he said, you know, you really should resolve this. You don't want me to have to make a decision because I'm going to order you, Mr. Votri, and your client to show cause why sanctions shouldn't be imposed for what went on here. And instead, you know, the appellants, the defendants here, the defendant appellants decided to proceed anyway and the order to show cause for sanctions has been briefed. But I believe, although again, I can't speculate on what's going on below, Mr. Blinn and I believe that the court is holding off until they see what this court does with the case. In other words, why revisit things after this court's made a determination. So that motion is still pending, the order to show cause. Do you want to speak to the substantive argument that a better way makes, and that is that there was excusable neglect? Your Honor, it's an abuse of discretion standard. If we had, if the decision had gone the other way and the court had, and the court had allowed Mr. Votri to put in his arguments, I don't think we would have challenged that simply because it's an abuse of discretion standard. Now, interestingly, the court addressed the merits. So there's really, you know, an issue to separate opinion on the merits. So the argument that there is somehow a meritorious defense is already gone. I mean, and that's one of the elements that would have to be shown in order to vacate the default. With respect to the default itself, there were emails going to five different email addresses. There was a status conference letter due that should have pinged something on Mr. Votri's email saying, you know, we've got a status conference letter coming up. Maybe you'd want to speak with Mr. Blinn and discuss this. There was the status conference letter that Mr. Blinn sent to Mr. Votri that mentioned the various motions that were being, that were pending before the court and the various proceedings that were going before the court. That went unanswered. Had the arbitrator or the judge direct both parties to submit a joint status letter? There was a, I'd have to double check, but I believe that the court directed the parties to work together to submit a joint status letter, yes. I'd have to go back and double check. I don't want to say anything that I. As I understand it, the letter that Mr. Blinn sent to Mr. Votri was a draft status letter. It was. It was. But he was saying, hey, here's the draft status letter. Let's confer. I mean, obviously, the preferred method is to submit something joint. We're giving the court the status. Let's work together and explain to the court what's going on on the case. Let's not just do things ex parte. Or not so much ex parte, but without consulting with each other. Just as Mr. Blinn wrote to Mr. Votri and said, you know what, let's sit down and work out what the damages are. Let's make sure we're on the same page here. So. But you kind of agree that the question of whether this default was excusable neglect is an issue which is kind of could have gone either way. Not under these circumstances. I don't believe so. All we have from Mr. Votri is two mysterious associates who were no longer working there and may have deleted e-mails, may have done this, may have done that. We have no detail as to when they left, how long they worked for him, what their precise duties were, how they were involved in this case, whether they were personally involved in this case when it was Mr. Votri who I believe had the only appearance for his firm on the case. But if we find that there's not a meritorious defense, do we have to parse out all of those? Absolutely not. No meritorious defense. Then you don't even get to the question of whether there was an excusable default. Unless the court has any additional questions, I'm down to 40 seconds. All right. Thank you, Your Honor. Thank you. Mr. Votri, you have three minutes. Have you, after this arbitration, advised your client a better way not to charge for lifetime oil changes or some optional insurance policy, or to refer to the bank when they were the financier of this deal? Have you advised them that they lost on those issues? They know they've lost on those issues. You're not asking me what I've advised them to do. You're asking me have I told them they've lost. Yes. Have you advised them to stop doing that? Your Honor, you're asking an attorney-client privilege issue, and I don't mean to be harsh about it. It's not a road I should go down. But in these cases, and in this case, it's not the charges that are the issue. Let us put it this way. We don't want to know what you told your client. We can tell you that your client would be well served if your client understood that this kind of behavior was not likely to get much attention. I have had, without disclosing content of conversations, many conversations with my client. Clients can be difficult. Yes, they can, Your Honor. What I want to address, first of all, in terms of the issue about the excusable neglect, at the end of the day, the judge did decide the application to vacate. So really that is a mood issue because it really all depends on the application to vacate. It doesn't do me any good to undo the judgment if the application to vacate is denied. But I think I need to address something else. Your Honor, I do represent this client. I have for a few years now. They're not what you think. The issues in this case revolve around how things are disclosed to the customers, not whether they should sell particular items. One of the problems we deal with with every case is it's our word against the customer's word. I will tell you that having represented a used car dealer, used car dealers don't necessarily walk into a courtroom being the most favored people on earth. We've all got our stories with used car sales, and I try to help them make a better image. That's good. But here's the thing. Your Honor, and this is Judge Cabranes. You don't know me, but I did live in Woodbridge. You don't know me either. I'm not Judge Cabranes. I'm Judge Calabrese. Calabrese. I apologize. There is a difference. Although we all lived in the same area, and I do, and I think the last time I spoke to you was as a young associate working for Dickey Jacobs in New Haven. But that being the case, you know, I believe in the argument that we've made, and my client is trying to defend the case. Nobody is trying to misrepresent anything, and all these documents were in front of Judge Thompson. The arbitration award, both final and interim, say exactly what they say. And I do differ on what I think the effect of a statement saying that I could not determine damage is. And, again, I'm paraphrasing, and I don't want to be cornered on not paraphrasing it perfectly. But that phrase means what it says. And I saw that as a suggestion that the burden of proof had not been met at that point. And if we make the argument that nothing new was submitted afterwards, then it begs the question as to why the damages couldn't have been awarded on the original award. And I didn't mean to argue with you as to the interim versus the final award. The practice is we do the liability and damages, and then we do the attorney's fees, and they get put together into a final, and that's when the letter closing, the entire hearing, comes from the AAA. All I've argued is that we went to a hearing, and we agreed that the arbitrator is going to decide the case, and then you're going to come back and get your attorney's fees, and I'm going to do what I've done many times, file whatever objection I have to the attorney's fees, and we don't do a hearing on that. We just do the affidavits, and the arbitrator decides it. It just was an unusual practice here. And, Judge, I'm going to tell you something. You did come at me with that you misrepresented things. I can't tell you how strongly I disagree, at least in terms of my motivations, in terms of what I was doing, and what my client has asked me to do, because this has been pointed at my client, and my client defends these cases because they actually do believe that they do a decent job for people, and it's my job to defend sometimes what may be, and, Your Honor, you've led me in that direction a little bit, an unpopular defendant. That is perfectly fine. Unpopular defendants is one of the most proper things for lawyers. I think it's an honorable thing to do, and it makes us stronger people for it, but, Your Honor, all my argument has been all along is that interim award said what it said, and it created a problem for me, which is that the judge said there wasn't enough to decide then, and like any civil case, I'm like, wait a minute. If they didn't meet their burden of proof, they don't get to prevail. I thought that the judge, I'm sorry, arbitrator, by allowing that is sort of saying, okay, let me help you. You didn't prove it the first time, or I couldn't figure it out the first time. I'm going to give you another chance. I'm not sure he would have given my client another chance if he couldn't make a decent defense at the hearing. But what about the argument, and, you know, we've kept you a long time. What about the point that opposing counsel made that even if that were all as you say, and we ignored the language about defining things, under the AAA, the arbitrator has a perfect right to reopen, that that is the nature of arbitration, so that even if everything were that way, opposing counsel began by saying even so, under an arbitration thing, he can do that. What about that? The answer to that, Your Honor, and this is how I see it, which is the statement was he didn't, instead of finding liability and saying he couldn't conclude precisely the damages, which is a statement saying I can't do it, he could have simply said I need an additional hearing. I need more submissions in order to do this case. But he took the position of saying that I can't do it with what I've got. And in a civil case, and I understand it's arbitration, but in a civil case, that would be a failure to make your damages claim. And he directed the two counsel to get together to give him the precise list that he wanted. I know, and because, Your Honor. And your side didn't respond. No, no, we didn't do it because at that point, when he said he couldn't determine it, we took the position strategically, it's a strategic decision, but we made the decision that because he stated that he could not determine the damages with what he got, that we were going to stand on that. And at that point. What does Rule 41 mean? Well, I think Rule 41 would allow him to reopen the hearing if he says, look, I've heard all this evidence. I don't have enough. I want to reopen the hearing. He made that statement, though. He made the statement saying I can't determine it. That's different than saying we need an additional day's hearing. To me, it looks like, okay, you didn't make your burden, and I'm going to give you a little help, and I'm going to let you kind of take another shot at it. That's the way we saw it, and that's the way my client saw it. So there's nothing nefarious here because everything is out in the open. It's just the position I have is by saying that, he basically said you didn't make your damages. I suppose that argument would make sense if the damages here were less determinate, if the damages were emotional distress or something along those lines. But they weren't. They're statutory damages and damages that you arrive at by doing some math calculations. But if that's the case, why did he need anything additional? That's what confuses me. For the same reason that I direct the parties to do the math and to submit it to me, for the same reason. My client in defending this case wanted to make the argument that if you can't determine them at that moment, in the case, you haven't determined damages. It's, I think, a proper defensive position, and it was meant to be as clear as can be. I mean, there was no hiding the ball on this because all the papers are there. There isn't a secret. All I've argued for my client is that read the instrument, read this. We think this means that he didn't determine damages at that point. All the evidence necessary to deal with that is in the awards. All of them were before the judge. One can argue it's an aggressive position in defending the case. It probably is. You know something? You might think . . . How often do people in the position of opposing counsel's client, plaintiffs . . . Well, not plaintiffs because you're a plaintiff. Claimants. Let's say claimants. . . . in this case, are people who have lawyers, who are articulate, who know how to fight this very aggressive position that you are taking. How often are they people who can be as represented as this particular client is? I mean, to be honest, Your Honor, most of the cases against us come from Mr. Boleyn's office, almost solely. I would say we're looking at 80% to 90% from Mr. Boleyn and the remainder from a group of other lawyers who do consumer practice. We have not had . . . that I've been involved in any pro se clients whatsoever. Mr. Boleyn is a very capable guy. No, no, he's a very capable guy. He has a very busy practice, not just with our client, but with car dealers. The funny thing, Your Honor, I think the public, the consumers, are relatively well protected. There are a number of lawyers in Connecticut that do these cases . . . If they get to lawyers like that, yes. They advertise on the internet. They actually do have a pretty big internet. In terms of Your Honor, I hope that I've at least explained to you that there was no intent to misrepresent anything. It was simply arguing on the basis of what we've done. Thank you, counsel. Thank you so much. I have a hypothetical for Mr. Bromberg that I neglected to answer when he was at the podium. Assume you prevail. That's part of what I'm asking you. Assume that this panel doesn't issue an order to show cause on sanctions. Would we expect to find a motion from you for fees for this appeal? I'm just trying to think. Ordinarily, my motion would go to the district judge for the fees. You're talking about to this court for this appeal. I submit one, absolutely. It doesn't go to the district court. It goes to us. Yeah, I would submit one, yes. Thank you. Thank you both for a very lively argument. Yes. Safe trip back to Connecticut, the Pearl of the Adriatic.